Good morning, Your Honor. I'm Bart Kline. I'm the attorney for the petitioner. His name is Iblis Cessay. Iblis Cessay is a professional nurse, as defined by the Department of Labor and Immigration, as it's now defined. This was determined by what's called Legacy INS on September 19, 1998, on a petition for an immigrant petition based on an employment offer. What Mr. Cessay would like to do is obtain his permanent residence status, and that's whether it's in the United States or overseas by obtaining an immigrant visa. What's preventing him from obtaining this permanent residence status, either through what's called Adjustment of Status in the United States or immigrant visa processing in West Africa, is whether or not he has voluntary departure or not. This case first came before this Court on a petition for review on a denial of an asylum claim from Cambodia. The immigration judge in the BIA essentially found the client to be credible, but not sufficient legal grounds for persecution to be granted asylum. Unlike most cases where the judges in the BIA find the person not to be credible, he was found to be credible. Just a legal issue. Counsel, let me kind of get the time sequence right in this case. He got his green card before the final decision of the BIA denying asylum? No, he got his petition approved before the final decision of the BIA denial. At that point, I was doing the petition portion, because I normally don't go into immigration court. The BIA appeal and the asylum hearing before the judge was done by Tony Salazar's office, and Mr. Salazar is in court today. When I got the petition approved, I prepared the adjustment and told him to go to Mr. Salazar's office to complete the process before the board. And the client, I guess, didn't do it. It was a four-month period there. And when he did get his denial, he came back to me, and I then did the petition for review, which is within the 30 days after the May 27, 1998, denial by the board. I did the petition for review within that 30 days. I had a motion to reopen with the board within that 30 days based upon the approved petition, plus the entire adjustment application to get his green card in the United States. And I filed with what's now called the Deportation Removal Branch of the Immigration Service, which is now called the Bureau of Immigration and Customs Enforcement. I filed an extended voluntary departure request until the mandate of the court in 1998. And so at that time, what happened is on the first motions before this court on the motion for stay, the court denied the motion for stay but granted dependency a state of the proceedings until the board made a decision on the motion to reopen based upon the approved petition, which seemed reasonable at that time. Since that time, since the filing of the motion, the Immigration Service, what's now called Legacy INS, which is now the Bureau, I mean, it's part of the Department of Homeland Security. Nobody, even though there are many motions to submit to the record, the Bureau has never opposed, one, the motion to reopen, and two, the Bureau has never denied the voluntary departure. And in fact, the same officer... I'm trying to sort out the legal things. Okay. So I know that the... that they didn't oppose the motion to reopen. That's correct. It happened today. But I guess you would like us to take a different approach than this Limsical case in the Ninth Circuit. Well, yes. You know, I'm... We can't really do that because we're only... we're a three-judge panel and a bank panel. So on the motion to reopen, the fact that they didn't contest it seems to me to be kind of irrelevant here under our current precedent. Well, what I'm saying is that they have a specific regulation that says it's unopposed. If they don't answer them, it's unopposed. And that regulation, they just restated it under HCFR 1003.2G. So, I mean, the regulation is still there, and it's my position still that since they didn't oppose it, and they still haven't opposed it, that it should have been granted. So, I mean, regardless of how the court views that, we have a specific regulation that they're bound by, both the board and the immigration judge. But I want minimally to get voluntary departure because the issue about voluntary departure is when he filed the motion to reopen and the petition for review, you had, of course, the case called, which I cite, which is Akiv v. INS. And this is a deportation case. And basically that case stays the voluntary departure until the mandate of the court. In the meantime, just recently, which was filed on 313.03, there's a case called Zazzuto-Carrello v. Ashcroft, which goes into whether or not the amendments of the Act to the Act of 1996 still allows this case to be valid. I'd like to make, one, the distinction that this is a deportation case, and therefore this transitional clause under 309 states that the transitional standards for review continue, and specifically states that in the traditional rules of the Act. Let me just get this straight. First, you'd like to say that BIA should have granted the motion to reopen. So let's say that doesn't work out. Yes, that doesn't work out. Then your next argument is, since he had this 140 petition approval, that that would be exceptional circumstances. Well, since it was, yeah, I would argue that that's an exceptional circumstance because of the proof prior to the first board decision of 98. And secondly is that the Department of Labor in 1980 established that if you're a nurse, you get a green card, essentially. It's called Schedule A. And because they adopted that per regulation, it's a policy of the United States. And for the BIA not to recognize that, I think it's irrational. The reason I'm asking this, I'm trying to kind of take it. These are very complicated issues, all these regulations. But two things concern me that you could address. One, I'm not sure that having the petition really is an exceptional circumstance because it's not meet that beyond-his-control type requirement. But I'm not sure he raised it, in which case then it seemed to me we would be left with what I thought was your third request, at least given the voluntary departure now. So am I correct about that? Yes, you're correct in what I want. I want something minimally at the end. Minimally you want voluntary departure. Right. And I'm saying that based upon the relief that you granted in Zuzuta, Corella v. Ashcroft, and also that has to do with a removal case, and that basically said that people are now on notice that you're not going to get a stay of your voluntary departure even if you ask for it and apply for your motion during the first 30-day stay. And therefore what your panel in that court did is remanded it back to the BIA to consider whether this reliance, the person's reliance is to their detriment. And so I'm basically stating I want at least a relief that's there because I'll get the remand on the voluntary departure. And, again, I need that voluntary departure because, let's say, you deny-the board at the end denies the motion to reopen. Even if you remand, I can send the person to West Africa. And the reason I can send the person now to West Africa because there's been change. It comes to conditions in Gambia on April and March of 2002 where I do lots of Gambian cases and I had a case coming up in May, and all the same experts were on my side. In any event, he's eligible now to be able to go back. Well, there's no danger in going back. So voluntary departure would be a meaningful- It is meaningful, yes. Meaningful but the lowest remedy. Well, that's right. Okay, he's a nurse. He's making money. He can travel to West Africa. This is not the issue. Yes, that's exactly what I want. Minimally I want that. And basically what I'm saying, based upon the old-the cases for deportation under-well, I cited ACHA versus INS. And based upon the relief on his removal case that just came down on 3-1303, voluntary departure is minimally what I want. And specifically if the case is remanded back, like the relief that was granted in that case, even if the board finally denies my client by having voluntary departure or by remanding it, we'll be able to immigrant visa process and get his green card overseas. That's different than the United States. But it was significant before because when the petition for review was first filed in 1998, he believed he had fear, and he was found to be credible. And that changed. I, as an officer of the court, have to tell the tribunal in this being changed country condition. At least that's my interpretation of it. Let's hear from the government. Okay. Thank you. Could I reserve the 55 seconds or whatever I have? Actually, you would be reserving 55 seconds in the hole. But I'll give you some time for rebuttal anyway. After the red, it kind of goes backwards. It's a little confusing. Good morning. May it please the court, my name is Debra Messier, and I represent the Attorney General. The only issue in this case is whether exceptional circumstances existed to excuse Mr. Sesay's failure to depart from the United States, as provided in the former 242-BF2. Mr. Sesay has failed to argue at all before the BIA or this court that there were exceptional circumstances. And absent any evidence of exceptional circumstances in the record, the BIA properly denied his motion to reopen on the basis that he failed to show a prima facie eligibility for adjustment of status. The court is familiar with the facts from the record and from opposing counsel's argument, but there are a few I just want to bring to your attention. First, Mr. Sesay entered the United States in 1992 as an F-1 non-immigrant student, and he entered with the specific approval of the INS to attend Shaw University. He has admitted that he never attended Shaw University. He failed to show up. He failed. He's alleged at some point that he went to the University of Washington, but he did not provide the INS with the new documentation required to do that. Well, he's admitted to deportability, has he not? He has, Your Honor. I just want to point out that he's failed to comply with the regulations and the circumstances surrounding his status from the very beginning of his entry into the United States. Okay, that makes him deportable, but now we're talking about voluntary deportation. Yes, Your Honor. Let me turn to the issues here. There are two main points the government would like to bring to the Court's attention. First, there was no abuse of discretion in the denial of the motion to reopen. Mr. Sesay failed to establish a ponyphagia case of eligibility, and under Shaw he was not eligible because he did not timely depart the United States. Well, Shaw is somewhat different, and there was never an application for an extension of the voluntary departure. Is that correct? That's correct, Your Honor. But the central principle in Shaw is certainly pertinent and critical to this case, and that is the Court recognized that aliens would abuse the system of voluntary departure if they were permitted to continually rely on filing new applications for voluntary departure in order to perpetuate their stay in this country, and they recognized Congress's concern with having aliens depart the United States when they have a final order of removal. I have a question about the basic first petition to this Court on the removal aspect of it, and then that was stayed for consideration of this reopening, but why didn't the initial petition result in an automatic stay of the voluntary departure? Because you initially petitioned for the basic appeal of the BIA's decision on deportation at that time. That's correct, Your Honor. My understanding is that the Court's order with respect to the first petition stayed the pendency of proceedings before the Ninth Circuit, before the Court of Appeals, in order for the BIA to determine the merits of the motion to reopen. Right. It did not address the voluntary departure issuer's status in any manner. Well, at that time it didn't have to, did it? Your Honor, I believe that that order to stay everything was done in 1998, which was post-ERIRA. If I may, I just want to... When was the appeal or the petition filed to appeal the BIA's first decision? It was filed in June of 1998, Your Honor, and that was concurrent with the motion to reopen. Okay. Would that put them in the same position as that Zezueta Carrillo case? No, Your Honor. We believe that the Carrillo case is distinguishable, and neither party has briefed that case. We're going to submit some additional 28-J letter to the Court after argument. The Zezueta Carrillo case established the principle that, one, 8 U.S.C. 1229C subsection F does preclude judicial review of orders directly related to voluntary departure. Secondly, and this is what opposing counsel was arguing, it suggests that the holding of this court in Contreras, Aragon, Aragarse, would no longer be valid for removal cases, for post-ERIRA cases. So the point is, in Zezueta Carrillo, the alien didn't come before the Court and say to the Court, please give my client voluntary departure. The alien brought up the voluntary departure in the posture of talking about a motion to reopen. Here, opposing counsel has suggested if the motion to reopen fails, then he would turn to an alternative remedy, which would be purely, Court, please give the alien voluntary departure. And that is clearly precluded by 8 U.S.C. 1229CF, and Zezueta Carrillo recognized that. Secondly, with respect to the transitional rules issue, again, we haven't briefed it, but we would suggest to the Court that the voluntary departure order at issue here came about with the BIA decision in 1998, denying the motion to reopen. It did not occur from the time of the immigration judge's decision, which would render it a transitional rules issue. Because it occurred in 1998, it falls under the ERIRA amendments and therefore would fall under the 1229CF preclusion. I'm interested in the stay also. Could you elaborate on that? The stay was granted. The reason I say that is because that seems to be reserved in the Zezueta Carrillo case, at least in the concurring opinion that if there is a stay, that there may not be the failure to obtain voluntary departure. Your Honor, frankly, I'm not familiar with that particular portion of the opinion. However, if you are referring to a stay of removal or stay of deportation issued by this Court, then that would be a fair argument. We would want the opportunity to brief that issue, though, since those issues were not raised prior. Do you know what the situation was with regard to the stay? I don't believe that this alien, Mr. Sessay, obtained a stay from the Court of Appeals. And I think opposing counsel is fine. I think he did. I thought he did. Well, that's gone. That's fine. We'll take a look at that. Counsel, I'm wondering if you would like to have this case referred to the Mediation Service. Here we have a situation where we have an alien who has been found to be credible. It's clear that there were some miscues in the way his case was handled. He is qualified as a nurse. The United States desperately needs nurses. Would this not be a case that might go to mediation that might result in an agreement for a voluntary departure? Your Honor, you raise a number of interesting issues. First, I don't know my office's position on mediation on immigration matters. I'd be happy to check that and get back to the Court. But secondly, the issue of credibility is irrelevant to this case. It has nothing to do with this case. I speak only in terms of a worthy alien. Your Honor, I think that whether or not he's worthy is questionable. He's never complied with any rules of the Immigration Service since he came to this country in 1992. Now, with respect to the argument that the United States needs nurses, it is true that there are regulations for individuals who file immigrant petitions to obtain an approved immigrant petition if they are a nurse. And there is no question Mr. Sessing has been successful in that. However, there is a second step before one gets a green card, which is what one gets when one becomes a permanent resident, and that is adjustment of status. And there, if you will, the service considers the equities of the matter. In this case, the equities do not lie with Mr. Sessing because he failed to comply with the voluntary departure requests, and he has failed to, in general, comply with immigration regulations. He certainly requested an extension of the voluntary departure. In this service, the directors never answered him. That is correct, Your Honor. I don't know why they didn't answer him. It could be because they've been pretty overworked recently. We would invite the Court to take a look at the Second Circuit case we cited to. I think it's called the Morales case. It's a recent case, and they based their decision in large part on this Court's decision in Saar. They said the failure of the INS to adjudicate a voluntary departure request is not an exceptional circumstance worthy of excusing this bar to adjustment of status. Just to quickly sum up, I say I have 50 seconds left. You are in the hall also. Oh, okay. Is that little red light? May I have one sentence, Your Honor? Please. In sum, we would ask the Court to deny Mr. Sesay's petition for review because he has failed to articulate at all any exceptional circumstances, and based on the doctrine of exhaustion of administrative remedies, he therefore deprives this Court of jurisdiction over that particular issue. And secondly, on the basis that the BIA, if the Court does find jurisdiction, that the BIA did not abuse its discretion in denying his motion to reopen for adjustment of status because exceptional circumstances did not exist. Thank you. Thank you. In the suggestion of Judge Schroeder about mediation, we, of course, would accept that in a similar case two and a half months ago, the same country, but approved petition by a mayor of the United States, citizen voluntary departure was granted by the Department of Homeland Security. I handled it. When they got denied, I handled it. I found out through a mandamus four years earlier the petition had been approved. The client just didn't know about it. The Office of Immigration Litigation, where she's from, they contacted the specific officer and the officer then granted the extension, which had been pending for two years. The same officer who would make that decision on voluntary departure just granted a work authorization for my client. So if OIL would contact them, I've been contacting them, obviously. And there was some decision on voluntary departure that could be made by the Department of Homeland Security. Exactly. We have your point in mind with respect to mediation and departure. Thank you very much. The case of Say versus the INS is submitted.
judges: Hug, B. Fletcher, McKeown